# In the United States Court of Federal Claims

No. 23-1585

(Filed: October 9, 2024)

```
*****************************************
GREG NYBERG,                              *
                                          *
              Plaintiff,                  *
                                          *
       v.                                 *
                                          *
THE UNITED STATES,                        *
                                          *
              Defendant.                  *
*****************************************
```

*Ryan L. Sweet*, Law Firm of Ryan Sweet, PLLC, Mountain Home, ID, counsel for Plaintiff.

*Douglas G. Edelschick*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was Holly Bryant, U.S. Army Legal Services Agency, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Former United States Army Reserve ("USAR") Major Greg Nyberg brings this wrongful discharge action seeking reinstatement, back pay, benefits, and other damages under the Military Pay Act ("MPA"), 37 U.S.C. § 204, and the Military Claims Act ("MCA"), 10 U.S.C. § 2733. Before the Court is the government's motion to dismiss Mr. Nyberg's complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons given below, the government's motion to dismiss is **GRANTED**.

**I.   BACKGROUND**

Mr. Nyberg served in the USAR. Second Am. Compl. [ECF 13] ¶ 113; [ECF 8-2] at 1.[1] On October 12, 2007, the USAR notified Mr. Nyberg of his discharge under other than honorable conditions, which became effective November 12, 2007. [ECF 7-10] at 2. Thereafter, on September 9, 2010, the Army Discharge Review Board ("ADRB") granted Mr. Nyberg's application to upgrade the characterization of his discharge to general under honorable conditions. [ECF 8-3] at 1. In 2014, Mr. Nyberg sought further relief from the Army Board for Correction of Military Records ("ABCMR"), including restoration to active duty, upgrade of his general discharge characterization to a fully honorable discharge, and removal of Officer

---

[1] All page numbers in the parties' briefings and exhibits refer to the page numbers generated by the Case Management/Electronic Case Files ("CM/ECF") system.

Evaluation Reports ("OERs"), Board of Inquiry ("BOI") results, and a Memorandum of Reprimand ("MOR") from his records. [ECF 8-7] at 2. The ABCMR denied his request on October 8, 2014. *Id.* at 2, 5. In 2017, Mr. Nyberg sought reconsideration of the ABCMR's denial of his request, as well as other relief, which the ABCMR denied on May 2, 2017. [ECF 8-8] at 1-3. In its September 15, 2017, notice to Mr. Nyberg, the ABCMR stated that the reconsideration decision was final, and that Mr. Nyberg was not eligible for further reconsideration by the ABCMR. *Id.* at 1.

Mr. Nyberg filed a complaint in this Court on September 14, 2023. Compl. [ECF 1]. On December 5, 2023, he amended his complaint for a second time to remove tort claims and to focus on the MPA and MCA claims. [ECF 13] ¶ 101. Specifically, Mr. Nyberg alleges that his discharge was based on "wrongful OERs," "flawed BOI results," and "processing errors." *Id.* ¶¶ 103, 109, 218. Under the MPA, he "seeks reinstatement on Active Duty from 2004 or 2007, rank promotions, back pay, retirement benefits, calculated and awarded, [and] all records corrected with earned recognition." *Id.* ¶ 221; *see also id.* ¶¶ 117, 225-43 (setting forth Counts I-III under MPA). Under the MCA, he seeks unspecified relief. *Id.* ¶ 119; *see also id.* ¶¶ 249-52 (setting forth Count IV under the MCA). Mr. Nyberg "calculates $10 million [in] adjusted damages and seeks a hybrid reinstatement and damages award." *Id.* at ¶ 255.

On January 1, 2024, the government filed a motion to dismiss Mr. Nyberg's complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). Def.'s Mot. to Dismiss [ECF 16]. In its motion, the government argues that Mr. Nyberg's MPA claims for wrongful discharge are barred by the six-year statute of limitations found at 28 U.S.C. § 2501. *Id.* at 4-10. The government also argues that this Court does not have jurisdiction to consider Mr. Nyberg's MCA claim because the MCA is not money-mandating. *Id.* at 10-11. The motion is fully briefed, [ECFs 17-19], and the Court held oral argument on October 3, 2024, [ECF 23].

## II.   STANDARD OF REVIEW

"The Court of Federal Claims is a court of limited jurisdiction." *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). The Tucker Act states that this court "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Under RCFC 12(b)(1), the government may assert that the court lacks subject-matter jurisdiction over a complaint. When the government challenges the court's jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Groundbreaker Dev. Corp. v. United States*, 163 Fed. Cl. 619, 623 (2023) (citing *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)). "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc.*, 659 F.3d at 1163 (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). If the jurisdictional facts are disputed, the "court may consider other relevant evidence." *Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305, 307 (2008) (citing *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988)). Jurisdiction is a threshold issue the court

must address before proceeding to the merits of the case. *Otoe-Missouria Tribe of Indians, Okla. v. United States*, 105 Fed. Cl. 136, 137 (2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). If the Court determines that it lacks subject matter jurisdiction, it must dismiss the case. RCFC 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *United Keetoowah Band of Cherokee Indians in Okla. v. United States*, 104 Fed. Cl. 180, 183 (2012).

## III.  DISCUSSION

The government argues that Mr. Nyberg's wrongful discharge claims under the MPA are time-barred because they fully accrued at the time of his discharge on November 12, 2007, meaning that the six-year statute of limitations expired in November 2013—nearly a decade prior to when he filed his complaint in this Court. [ECF 16] at 5. With respect to Mr. Nyberg's MCA claim, the government argues that this Court does not have jurisdiction because the MCA is not a money-mandating source of law. *Id.* at 10. Moreover, the government argues that the substance of Mr. Nyberg's claims are tort claims, which fall outside of this Court's jurisdiction. *Id.* at 10-11.

In opposition, Mr. Nyberg contends that his MPA claims are timely because he filed his complaint within six years of the ABCMR's September 15, 2017, final decision. Pl.'s Resp. [ECF 17] at 1, 4. Alternatively, Mr. Nyberg insists that the Court should equitably toll the statute of limitations because he "acted in good faith with diligence to preserve his rights" but was prevented from meeting the deadline "due to honest mistakes or [government] deception or frauds," *id.* at 13, and that the statute of limitations has not begun to run because "[h]e was never fully or correctly discharged," *id.* at 6, 9. Regarding his MCA claim, Mr. Nyberg argues that the MCA "allows suit for negligence or wrongful injury caused through act or omission by military personnel," that "[t]he facts of the case demonstrate by at least a preponderance that [Mr.] Nyberg was materially harmed by Defendant," and that Mr. Nyberg "suffered harm including . . . legal malpractice, misfeasance, malfeasance, abuse of discretion, bad faith, and wrongful administrative acts or omissions resulting in and failing to restore or correct his stigmatizing discharge harm, including employment contractual interference and intentional infliction of emotional distress." *Id.* at 16-17.

As explained below, the Court concludes that it cannot exercise jurisdiction over Mr. Nyberg's complaint because his MPA claims are barred by the six-year statute of limitations and his MCA claim is not based on a money-mandating statute or other source of law that provides this Court with jurisdiction.

### A.  Mr. Nyberg's MPA Claims Are Time-Barred

Generally, the United States is immune from suit except as it consents to be sued. *United States v. Testan*, 424 U.S. 392, 399 (1976). By way of consent, Congress may "choose to waive that immunity." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) (citing *Testan*, 424 U.S. 399). The Tucker Act is one example of such a waiver that applies to actions against the United States brought pursuant to a money-mandating constitutional provision, statute, or regulation. *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003); 28 U.S.C. §1491(a)(1). In military discharge cases, the "money-mandating" statute

typically invoked is the MPA. *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003); 37 U.S.C. § 204. To bring a discharge case before the United States Court of Federal Claims, "a plaintiff . . . must allege that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Id.*

However, the Tucker Act's waiver of sovereign immunity is constrained by a six-year statute of limitations. *See* 28 U.S.C. § 2501; *Centers v. United States*, 71 Fed. Cl. 529, 536 (2006) ("The Tucker Act's six-year statute of limitations operates as an express limitation on the Federal Government's waiver of sovereign immunity for non-tort monetary claims against the United States."). Indeed, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 25 U.S.C. § 2501. "A claim first accrues and the six-year statute of limitations begins to run . . . 'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *Hart v. United States*, 910 F.2d 815, 817 (Fed. Cir. 1990) (quoting *Kinsey v. United States*, 852 F.2d 556, 557 (Fed. Cir. 1988)). "The statute of limitations is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived." *Hart,* 910 F.2d at 818-19.

Mr. Nyberg's wrongful discharge claims under the MPA are time-barred by the six-year statute of limitations. It has long been established that a Tucker Act claim for wrongful discharge accrues at the time of discharge. *Martinez*, 333 F.3d at 1303. If the plaintiff fails to file a lawsuit within the six-year period set by 28 U.S.C. § 2501, the plaintiff "loses all rights to sue for the loss of pay stemming from the challenged discharge." *Id.* at 1304. Here, Mr. Nyberg was discharged on November 12, 2007, [ECF 7-10] at 2, and he filed his complaint alleging wrongful discharge and seeking compensation under the MPA on September 14, 2023, [ECF 1]. This is over ten years after the date of his discharge, which well exceeds the six-year limitation period. Because Mr. Nyberg failed to file his complaint within the six-year statute of limitations, the Court lacks jurisdiction to consider his claims under the MPA.[2]

Mr. Nyberg attempts to avoid the 28 U.S.C. § 2501 limitation by advancing several arguments that binding precedent expressly preclude. First, Mr. Nyberg argues that his claims did not accrue until the 2017 ABCMR decision, after he had exhausted all of his administrative remedies. [ECF 17] at 4-5. However, in *Martinez*, the Federal Circuit stated that it has "frequently addressed *and rejected* the argument that the cause of action for unlawful discharge does not accrue until the service member seeks relief from a correction board and the correction board enters a final decision denying relief." 333 F.3d at 1304 (emphasis added). As the Federal Circuit explained, because resort to a military correction board is permissive, not mandatory, it does not "prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending exhaustion of that administrative remedy." *Id.* at 1304. Therefore, the Federal Circuit held that the plaintiff's wrongful discharge claim "accrued on the date of the

---

[2] Mr. Nyberg also cites to the Corrections Board statute, 10 U.S.C. § 1552, as a money-mandating statute that provides this Court with jurisdiction over his wrongful discharge claims. [ECF 13] ¶¶ 117, 122, 248; [ECF 17] at 1-2 ("This Court has previously acknowledged Jurisdiction to review administrative actions and decisions of the . . . correction Boards, pursuant to 10 U.S.C §1552."). However, this statute "is not independently money-mandating" and "does not independently provide this Court with jurisdiction to correct [a plaintiff's] records." *Jordan v. United States*, 158 Fed. Cl. 440, 451 (2022). Because Mr. Nyberg's wrongful discharge claims seeking back pay and other monetary compensation are time-barred, this Court lacks the authority to correct Mr. Nyberg's records.

discharge . . . and [t]he statute of limitations for filing suit in the Court of Federal Claims therefore began to run at that time." *Id.* at 1310. The Federal Circuit further held that the plaintiff's cause of action for wrongful discharge "did not accrue for a second time when the Correction Board refused to grant [plaintiff's] request for relief." *Id.* These principles apply to Mr. Nyberg's wrongful discharge claims under the MPA. The statute of limitations on his wrongful discharge cause of action began to run on November 12, 2007—the date of his alleged wrongful discharge—and his cause of action did not accrue for a second time when the ABCMR issued its decision denying his requests for relief in 2017.[3]

Mr. Nyberg next argues that the statute of limitations under the Tucker Act, 28 U.S.C. § 2501, is not jurisdictional and that equitable tolling is warranted due to his diligence in pursuing his claims and the Army's bad faith conduct, deceptive actions, and failure to adhere to regulations. [ECF 17] at 9-13; Pl.'s Second Resp. [ECF 19] at 8-18. In *John R. Sand & Gravel Company v. United States*, the United States Supreme Court explicitly held that the statute of limitations in 28 U.S.C. § 2501 is jurisdictional and "not susceptible to equitable tolling." 552 U.S. 130, 136 (2008); *see also FloorPro, Inc. v. United States*, 680 F.3d 1377, 1382 (Fed. Cir. 2012) ("*Sand & Gravel* makes clear that section 2501 sets forth an absolute time limit for filing suit in the Court of Federal Claims" and "the six-year limitations period cannot be extended even in cases where such an extension might be justified on equitable grounds") (internal citations omitted). Thus, it is settled law that the Tucker Act's time bar on bringing a claim is jurisdictional and not amendable to equitable tolling.[4]

---

[3] Mr. Nyberg cites to various district and circuit court decisions addressing Administrative Procedure Act ("APA") challenges to military correction board decisions in support of his contention that his wrongful discharge claim accrued when the ABCMR issued its final decision in September 2017 and that this Court therefore has jurisdiction to review the ABCMR's decision in his case. [ECF 17] at 2-4. However, these decisions are inapposite because those plaintiffs sought review of board decisions under the APA, not monetary relief for wrongful discharge under the Tucker Act. In other words, "[b]ecause the APA actions did not turn on a claim for money, the actions could be said to accrue at the time of the challenged agency action . . . rather than at the time of the action that caused the plaintiff monetary loss—the discharge itself." *Martinez*, 333 F.3d at 1313. While this Court may review correction board decisions in connection to a monetary action brought under the Tucker Act, the limitations period for such an action "is established by the date of accrual, which is the date on which the service member was denied the pay to which he claims entitlement." *Id.* at 1314. Further, because this Court lacks APA jurisdiction, it is "not empowered to treat this case as a nonmonetary challenge to final agency action by the Correction Board." *Id.*

[4] Citing the United States Supreme Court's decision in *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015), Mr. Nyberg argues that, while the Supreme Court "did not directly disturb the Tucker Act['s time bar], it implied that it is ripe for review and equitable tolling given [that] the same timeliness language" is contained in the Tucker Act and the Federal Tort Claims Act ("FTCA"). [ECF 19] at 17. In *Kwai Fun Wong*, the Supreme Court explained that "most time bars are nonjurisdictional" and that "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id.* at 410. It then concluded that Congress did not meet this high bar with respect to the FTCA statute of limitations and, therefore, "[t]he time limits in the FTCA are just time limits," are not jurisdictional, and "[e]ven though they govern litigation against the Government, a court can toll them on equitable grounds." *Id.* at 412. As Mr. Nyberg concedes, the Supreme Court's holding in *Kwai Fun Wong* with respect to the FTCA does not extend to the Tucker Act's time bar. *See id.* at 413-18 (holding that the Tucker Act's time bar "constrains a court's power to hear late claims" not because of particular language in the statute but because of *stare decisis*). Furthermore, "since *John R. Sand*, this Court and the United States Court of Appeals for the Federal Circuit have reiterated on several occasions, without qualification, that 28 U.S.C. § 2501 is impervious to equitable tolling." *Blue Cross and Blue Shield of Kansas City Welfare Benefit Plan v. United States*, 2024 WL 3738315, at *12 (2024) (collecting cases). Thus, despite Mr. Nyberg's arguments, the Court must adhere to binding precedent that precludes equitable tolling of the Tucker Act's

Lastly, Mr. Nyberg argues that the statute of limitations never began to run because he was "never fully or correctly discharged." [ECF 17] at 6. Citing 10 U.S.C. § 1168, he argues that a discharge order alone does not constitute legal separation and that the law requires three events for a valid discharge: delivery of a DD Form 214 discharge certificate, final accounting of pay, and out processing. *Id.* at 7. Hence, he maintains that he "is still constructively in the military," *id.* at 5, "remains in an unpaid military duty status," [ECF 13] ¶ 127, and has a "continuing" claim, [ECF 17] at 9. The government disputes Mr. Nyberg's allegations, specifically his entitlement to a DD Form 214. [ECF 16] at 6. The Court need not resolve this dispute to determine whether Mr. Nyberg's wrongful discharge claims are time-barred. With respect to Mr. Nyberg's argument that his claim is a "continuing claim," the Federal Circuit in *Martinez* held that a "claim for back pay *is not a continuing claim* that accrues each time a payment would be due throughout the period that the service member would have remained on active duty." 333 F.3d at 1303 (internal quotation marks omitted) (emphasis added). Furthermore, assuming *arguendo* that the Army failed to adhere to the required discharge procedures, this failure does not extend the accrual of Mr. Nyberg's wrongful discharge claims. Instead, as explained above, a wrongful discharge claim "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e. when 'all events have occurred to fix the Government's liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez*, 333 F.3d at 1303 (internal citations omitted). Mr. Nyberg was notified of his discharge from the USAR on October 12, 2007, and it became effective on November 12, 2007. [ECF 7-10] at 2. The discharge was subsequently carried out when Mr. Nyberg was removed from active-duty service, sent home, and no longer received payments for active-duty services. *See* [ECF 13] ¶ 127. Thus, despite the Army's alleged failure to follow the proper discharge protocols, on or around November 12, 2007, all events had occurred to fix the Army's liability to Mr. Nyberg stemming from his alleged wrongful discharge, thus entitling him to pursue reinstatement and demand back pay. Mr. Nyberg's allegation that the Army's discharge procedures, including its failure to provide him with a DD Form 214, were improper or contrary to law may have helped shape his wrongful discharge claim, but it does not salvage his wrongful discharge claim from being untimely under the Tucker Act's statute of limitations.

### B.   Mr. Nyberg's MCA Claim Is Not Based on a Money-Mandating Source of Law

As established above, the Tucker Act provides the necessary waiver of immunity for actions for money damages against the United States. *White Mountain Apache Tribe,* 537 U.S. at 472; 28 U.S.C. §1491(a)(1). However, the Tucker Act itself does not create substantive rights to money damages enforceable against the United States; it is merely a jurisdictional statute designed to waive sovereign immunity for claims for money damages based on other sources of law. *White Mountain Apache Tribe,* 537 U.S. at 472; *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). A statute may "create[] a right capable of grounding a claim" under the Tucker Act. *White Mountain Apache Tribe*, 537 U.S. at 472. To do so, however, the claimant must demonstrate that the statute "'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained' . . . [or that the statute] grants the claimant a

---

statute of limitations. *See Stocum v. United States*, 85 Fed. Cl. 217, 222 (2008) (explaining that the Court of Federal Claims must follow the precedents set by the Supreme Court and Federal Circuit).

right to recover damages either 'expressly or by implication.'" *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1383 (Fed. Cir. 2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 216-17, 217 n.16 (1983).

The MCA fails to meet this criterion. In *Collins v. United States*, the Federal Circuit considered whether the United States Court of Federal Claims had properly dismissed a claim under the MCA for lack of jurisdiction. 67 F.3d 284, 285 (Fed. Cir. 1995). In affirming the dismissal, the Federal Circuit explained that the MCA "is permissive and not mandatory" because "[i]t provides that the Secretary 'may' settle and pay claims." *Id.* at 286 (quoting 10 U.S.C. § 2733(a)). Since "settling and paying claims [under the MCA] is entirely discretionary and not mandatory," the Federal Circuit concluded that the MCA does not mandate the payment of money. *Id.* This crucial distinction means that the jurisdictional grant under the Tucker Act does not extend to the MCA because it lacks a mandate for compensation. *See Meyers v. United States*, 96 Fed. Cl. 34, 45 (2010) ("The Federal Circuit has . . . held that a source of law is not money mandating when the government enjoys complete discretion in determining who is, and who is not, entitled to a payment.") (citing *Doe v. United States,* 463 F.3d 1314, 1324 (Fed. Cir. 2006)). Because the MCA is not a money-mandating source of law, Mr. Nyberg's MCA claim must be dismissed for lack of jurisdiction. *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (holding that "the absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act").[5]

### IV.    CONCLUSION

In sum, this Court does not have jurisdiction to consider Mr. Nyberg's claims under the MPA because the claims are time-barred or to consider his claim under the MCA because the MCA is not a money-mandating source of law. Consequently, the Court **GRANTS** the government's motion to dismiss [ECF 16] for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz<br>
THOMPSON M. DIETZ, Judge

---

[5] In his opposition to the government's motion to dismiss, Mr. Nyberg does not address *Collins*. *See generally* [ECF 17]. He only states that "32 CFR § 536.73 et. al. allows suit for negligence or wrongful injury caused through act or omission by military personnel" and that "[s]ection 536.77(2) provides claims arising out of noncombat activities are not tort claims and require only proof of causation." *Id.* at 16 (emphasis omitted). These regulations implement the MCA, but they do not make the MCA money-mandating or otherwise provide a separate money-mandating source of law. Mr. Nyberg has failed to demonstrate that this Court may exercise jurisdiction over his MCA claim.